**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Northern Division*

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2011 MAY 26  A 11: 06

CLERK'S OFFICE
AT BALTIMORE
BY_____DEPUTY

Rod J. Rosenstein
United States Attorney

James G. Warwick
Assistant United States Attorney

36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201

410-209-4800
TTY/TDD:410-962-4462
410-209-4860
FAX 410-962-0716
James.Warwick@usdoj.gov

January 26, 2011

Gary Ticknor, Esquire
Attorney at Law
5695 Main Street
Elkridge, MD 21075-5016

Re:   United States v. Joy Edison
      Criminal No. JFM-10-0493

Dear Mr. Ticknor:

This letter confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have her execute it in the spaces provided below. The terms of the agreement are as follows:

### Offense of Conviction

1.  The Defendant agrees to plead guilty to Count Two of the Superseding Indictment now pending against her, which charges her with Conspiracy to Launder Money, in violation of 18 U.S.C. §§ 1956(h). The Defendant admits that she is, in fact, guilty of this offense and will so advise the Court.

### Elements of the Offense

2.  The elements of the offense to which the Defendant has agreed to plead guilty, and which the Government would prove if the case went to trial are as follows:

Revised 8/8/08



Count Two:

     a.     There existed a conspiracy involving two or more individuals which had, as its purpose, the unlawful conduct of monetary transactions involving property and proceeds with a value of greater than $10,000, which were derived from a specified unlawful activity;

     b.     the monetary transactions affected interstate and foreign commerce; and

     c.     The defendant, knowing the unlawful purpose of the agreement, intentionally became a member of the conspiracy.

### Penalties

3. The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: twenty years imprisonment, a $500,000 fine, followed by a term of supervised release of not more than five years. In addition, the Defendant must pay $100.00 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order her to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if she serves a term of imprisonment, is released on supervised release, and then violates the conditions of her supervised release, her supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

### Waiver of Rights

4. The Defendant understands that by entering into this agreement, she surrenders certain rights as outlined below:

     a.     If the Defendant had persisted in her plea of not guilty, she would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

     b.     If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. You and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and you

---

[1].     Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in her defense, however, she would have the subpoena power of the Court to compel the witnesses to attend.

    d. The Defendant would have the right to testify in her own defense if she so chose, and she would have the right to refuse to testify. If she chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from her decision not to testify.

    e. If the Defendant were found guilty after a trial, she would have the right to appeal the verdict to see if any errors were committed which would require a new trial or dismissal of the charges against her.

    f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that she may have to answer the Court's questions both about the rights she is giving up and about the facts of her case. Any statements the Defendant makes during such a hearing would not be admissible against her during a trial except in a criminal proceeding for perjury or false statement.

    g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find her guilty.

    h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he/she is not a citizen of the United States, pleading guilty may have consequences with respect to his/her immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his/her attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he/she wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5.  The Defendant understands that a sentencing guidelines range for this case (henceforth the "advisory guidelines range") will be determined by the Court pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991-998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range.

## Factual and Advisory Guidelines Stipulation

6.  (a)  This Office and the Defendant understand, agree and stipulate to the Statement of Facts as set forth herein, which would be proved beyond a reasonable doubt and to the following applicable sentencing guidelines factors:

Between in or about December of 2003 and August of 2010, there existed a conspiracy, in Maryland and elsewhere, to engage in and conduct monetary transactions which affected interstate and foreign commerce. These monetary transactions involved criminally derived property that was of a value greater than $10,000, and that said property was derived from a specified unlawful activity, specifically, the sale of narcotic drugs. Ms. Edison became a member of said conspiracy and agreed with Steven Blackwell and others, to conduct transactions designed to launder proceeds from the sale of heroin in Baltimore City. The Defendant stipulates and agrees that monies in excess of $1,000,000 were generated by Steven Blackwell through the sale of heroin in Baltimore City.

Among the monetary transactions conducted by the Defendant and her co-conspirators during the period of the conspiracy was the gambling of drug proceeds at Las Vegas casinos such as the Venetian, Caesar's Palace, and the MGM Grand. "Cash-outs" from said gambling endeavors exceeded $184,000. The Defendant and Steven Blackwell also purchased "winning" Maryland Lottery tickets in amounts exceeding $138,000 from individuals in order to disguise drug proceeds as legitimate lottery winnings. The Defendant also make cash deposits of drug proceeds to her bank accounts exceeding $79,000 during 2007 and 2008. On May 30, 2008, a cash deposit of $83,000 was made by Steven Blackwell and Joy Edison into her bank account to serve as partial payment for a property located at 78 Winslow Drive, Elkton, Maryland. Said property then served as the residence for Blackwell and Edison. Additional monies in the hundreds of thousands of dollars in cash were given to individuals operating used car businesses in efforts to further launder large amounts on drug proceeds. Cash proceeds of drug sales were also used to purchase the following properties in Baltimore, Maryland:

2400 East Oliver Street, Baltimore, Maryland—$19,000;
2629 East Oliver Street, Baltimore, Maryland—5,000;
2608 Llewellyn Street, Baltimore, Maryland—$5,893;
1403 East Federal Street, Baltimore, Maryland—$18,000;
936 East Biddle Street, Baltimore, Maryland—$22,711;

4

1017 North Monroe Street, Baltimore, Maryland—$10,000.

The **base offense level** for the crime outlined above is **eight (8)** pursuant to Guideline Section 2S1.1(a)(2) In that the **Defendant knew that the monies laundered were proceeds from the sale of narcotic drugs, a six (6) level increase** in the offense level is required by Section 2S1.1(b)(1) In that the **amounts laundered were more than $400,000 but less than $1,000,000, there is a further upward adjustment of fourteen (14) levels.** An additional **two (2) level increase under Section 2S1.1(b)(2)(B) is required in that the offense of conviction herein is for a violation of 18 U.S.C. § 1956. The total offense level is thirty(30).**

      (b)      The United States does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for her criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of her intention to plead guilty. **The net offense level is 27.** This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about her involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw her plea of guilty.

      7.      The Defendant understands that there is no agreement as to her criminal history or criminal history category, and that her criminal history could alter her offense level if she is a career offender or if the instant offense was a part of a pattern of criminal conduct from which she derived a substantial portion of her income.

      8.      This Office and the Defendant agree that there are no facts and/or sentencing guidelines factors in dispute. This Office and the Defendant agree that, with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in Chapters 2, 3 or 4 of the United States Sentencing Guidelines will be raised or are in dispute. The Defendant may raise factors set forth in 18 U.S.C. Section 3553(a) in mitigation of sentence.

      9.      At the time of sentencing, this Office will recommend a sentence at the low end of the applicable guideline range.

      10.      The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Superseding Indictment, if any, that this Office has agreed to dismiss at sentencing.

<u>Waiver of Appeal</u>

11. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

a) The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

b) The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed, including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release. Nothing in this agreement shall be construed to prevent either the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), and appealing from any decision thereunder, should a sentence be imposed that is illegal or that exceeds the statutory maximum allowed under the law or that is less than any applicable statutory mandatory minimum provision. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Forfeiture

12. The Defendant agrees to forfeit to the United States all of her right, title, and interest in any and all money, property, or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, the Defendant's illegal activities, including the following:

All right, title and interest in the real property held in the name of JJM and J Edison, LLC, Steven Blackwell, and Joy Edison, including, but not limited to the following properties:

1. 78 Winslow Drive, Elkton, Maryland;
2. 2400 East Oliver Street, Baltimore, Maryland;
3. 2629 East Oliver Street, Baltimore, Maryland;
4. 2608 Llewellyn Street, Baltimore, Maryland;
5. 1403 East Federal Street, Baltimore, Maryland;
6. 1328 North Linwood Avenue, Baltimore, Maryland;
7. 1017 North Monroe Street, Baltimore, Maryland;
8. 936 East Biddle Street, Baltimore, Maryland.

a. The Defendant agrees to assist fully the United States in the forfeiture of the foregoing asset. The Defendant agrees to take all steps necessary to pass to the United States clear

title to this asset, including but not limited to executing any and all documents necessary to transfer his interest in any of the above property to the United States, assisting in bringing any assets located outside the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture. The Defendant further agrees that she will not assist a third party in asserting a claim to the foregoing assets in an ancillary proceeding.

b. The Defendant knowingly waives all constitutional, legal and equitable defenses to the forfeiture of the foregoing assets. It is further understood that, in the event that the United States files a civil action pursuant to 18 U.S.C. § 981 or any law enforcement agency initiates a forfeiture proceeding seeking to forfeit these assets, the Defendant will not file a claim with the Court or agency or otherwise contest such a forfeiture action and will not assist a third party in asserting any such claim. It is further understood that the Defendant will not file or assist anyone in filing a petition for remission or mitigation with the Department of Justice concerning the forfeited assets.

c. The Defendant agrees to identify all other assets and identify the sources of income used to obtain all other assets, including identifying all assets derived from or acquired as a result of, or used to facilitate the commission of, any crime charged in the Indictment. The United States reserves the right to proceed against any remaining assets not identified in this agreement, including any property in which the Defendant has any interest or control.

## Court Not a Party

13. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the advisory guidelines range, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The judge may consider any reliable evidence, including hearsay, in fashioning the sentence. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw her guilty plea, and will remain bound to fulfill all of her obligations under this agreement. The Defendant understands that neither the prosecutor, her counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction

or promise.

### Obstruction or Other Violations of Law

14. The Defendant agrees that she will not commit any offense in violation of federal, state or local law between the date of this agreement and her sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for her conduct by failing to acknowledge her guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that she may not withdraw her guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Entire Agreement

15. This agreement does not bind any federal, state, or local prosecuting authority other than this Office. This agreement, together with the Sealed Supplement, constitutes the complete plea agreement in this case. There are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this agreement, and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this letter, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
James G. Warwick
Assistant United States Attorney

    I have read this agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I understand this plea agreement, and I voluntarily agree to it. I am completely satisfied with the representation of my attorney.

2/24/2011  
Date

Joy Edison

    I am Ms. Edison's attorney. I have carefully reviewed every part of this agreement with her. To my knowledge, her decision to enter into this agreement is an informed and voluntary one.

2/24/2011  
Date

Gary Ticknor, Esquire

9